IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATHEW CAUGHEY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BRIDGECREST ACCEPTANCE CORPORATION,<br><br>Defendant. | Civil Action No. 2:23-cv-264<br><br>Electronically Filed |

**DEFENDANT BRIDGECREST ACCEPTANCE CORPORATION'S**
**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant Bridgecrest Acceptance Corporation ("Bridgecrest" or "Defendant")[1] has removed the matter captioned above from the Court of Common Pleas of Allegheny County, Pennsylvania (the "State Court Action") to the United States District Court for the Western District of Pennsylvania. As grounds for removal, Bridgecrest states as follows:

**STATEMENT OF THE CASE**

1. On January 13, 2023, Plaintiff Mathew Caughey ("Caughey" or "Plaintiff") filed a putative Class Action Complaint in the State Court Action (the "Complaint"). Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the Complaint is attached and incorporated by reference as **Exhibit 1**. No other proceedings have occurred in the State Court Action.

---

[1] While Bridgecrest Acceptance Corporation was named as Defendant in this case, Bridgecrest Credit Company, LLC is the servicer of the Retail Installment Contract and Security Agreement at issue in the Complaint and discussed below. Bridgecrest Acceptance Corporation has no relationship with Plaintiff, as servicer of the at-issue Retail Installment Contract and Security Agreement or otherwise.

2.  On January 19, 2023, Bridgecrest was served with a copy of the Complaint. No other pleadings, process, or orders in the State Court Action have been served upon Bridgecrest, and Bridgecrest has not filed any responsive pleadings in the State Court Action.

3.  Plaintiff alleges that he purchased a Ford Escape ("Vehicle") from third party Carvana, LLC pursuant to a Retail Installment Contract and Security Agreement ("RISC"). *See* Compl. ¶¶ 22-24. Plaintiff alleges that the RISC included a finance charge of 23.28% APR. *Id.* ¶ 26. Plaintiff alleges that after purchasing the Vehicle, he made approximately 12 payments by phone to Bridgecrest using a debit card. *Id.* ¶¶ 27-28. Plaintiff alleges that Bridgecrest charged him interest at a rate of 23.28% and a $3.95 "money transfer fee" for each payment made over the phone. *Id.* ¶¶ 30-31.

4.  Plaintiff alleges that Bridgecrest, as a sales finance company, is subject to Pennsylvania's Consumer Credit Code ("CCC"), 12 P.S. §§ 6201 *et seq.*, formerly the Motor Vehicle Sales Finance Act ("MVSFA"), 69 P.S. §§ 601 *et seq. Id.* ¶ 12. Plaintiff alleges that under the CCC a licensee may charge, collect, contract for, or receive a "finance charge" on new motor vehicles and used motor vehicles that are less than two years old of no more than 18% and a "finance charge" on used motor vehicles that are more two years old of no more than 21%. *Id.* ¶¶ 13-16. Plaintiff alleges that CCC licensees "may not impose 'pay-to-pay' fees (*i.e.*, fees that companies charge consumers to process payments)" under the CCC. *Id.* ¶¶ 17-21. Plaintiff alleges that the 23.28% interest and the "money transfer fees" that Bridgecrest charged him are impermissible under Pennsylvania law. *Id.* ¶ 32. Plaintiff alleges that Bridgecrest regularly charges, collects, contract for, or receives excessive interest and "pay-to-pay" fees from Pennsylvania customers. *Id.* ¶ 34.

5. Plaintiff seeks to certify two putative classes. *Id.* ¶ 37. First, Plaintiff seeks to certify "The 'Pay-To-Pay' Fee Class" defined as "[a]ll Pennsylvania residents who, within the applicable statute of limitations, paid a 'money transfer fee or similar fee on an installment payment due to Defendant." *Id.* Second, Plaintiff seeks to certify "The Interest Overcharge Class" defined as "[a]ll Pennsylvania residents who, within the applicable statute of limitations, paid an interest charge above 18% on an installment payment due to Defendant on a new motor vehicle, paid an interest charge above 18% on an installment payment due to Defendant on a used motor vehicle that was less than two years old, and/or paid an interest charge above 21% on an installment payment due to Defendant on a used motor vehicle that was over two years old." *Id.*

6. Plaintiff asserts claims for: (1) violation of the Pennsylvania Uniform Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201 *et seq.*, *see id.* ¶¶ 46-51; (2) violation of the Loan Interest and Protection Law ("LIPL"), 41 P.S. §§ 101 *et seq.*, *see id.* ¶¶ 52-55; and (3) unjust enrichment, *see id.* ¶¶ 52-55. Among other requested relief, Plaintiff seeks an award of "actual, compensatory, consequential, statutory, treble, and all other damages available by law[,]" along with "attorneys' fees, costs, and expenses" and "pre- and post-judgment interest[.]" *Id.*, Prayer for Relief ¶¶ C., E., and F.

## CLASS ACTION FAIRNESS ACT

7. Removal of an action filed in state court is proper in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." *See* 28 U.S.C. § 1441(a). This Court has original jurisdiction over this matter under the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. § 1332(d)(2).

*CAFA Overview*

8. Under CAFA, district courts have original jurisdiction over putative class actions raising state law claims where: "(1) the amount in controversy exceeds $5,000,000, as aggregated across all individual claims; (2) any member of a class of plaintiffs is a citizen of a state different from any defendant; and (3) the class has at least 100 members." *See Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014).

9. This Court must assess CAFA jurisdiction at the time of removal. *See Castro v. Linden Bulk Transp. LLC*, Civ. A. No. 19-20442, 2020 WL 2573288, at *2 (D.N.J. Apr. 20, 2020) (citing *Coba v. Ford Motor Co.*, 932 F.3d 114, 119 (3d Cir. 2019)) ("To determine whether CAFA's subject matter jurisdictional requirements are satisfied, courts consider the allegations in the complaint at the time of removal and defendant's notice of removal."); *Crista v. Drew Univ.*, Civ. A. No. 21-249, 2021 WL 1422935, at *11 (D.N.J. Apr. 14, 2021) ("Generally, courts assess CAFA jurisdiction based on the pleadings at the time of removal.").

10. All three of CAFA's elements are satisfied here.

*CAFA's Amount in Controversy Requirement*

11. **First**, with respect to CAFA's "amount-in-controversy" requirement, when a plaintiff alleges no specific amount of damages, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *See Dart Cherokee Basin Operating Co. v. Owens*, 135 S.Ct. 547, 544 (2014); *see also USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 205 n. 12 (3d Cir. 2003) (noting that liberal standards apply in determining if the necessary amount in controversy has been met). Further, "the claims of the individual class members shall be aggregated." *See* 28 U.S.C. § 1332(d)(6); *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (holding that to determine whether the amount in

controversy exceeds $5 million for CAFA jurisdiction, claims of named and unnamed putative class members who fall within the proposed class shall be aggregated).

12. In this case, information relating to satisfaction of the CAFA "amount in controversy" requirement is contained in the Declaration of Paul Beinlich, IV ("Beinlich Declaration"). A true and correct copy of the Beinlich Declaration is attached and incorporated by reference as **Exhibit 2**.

13. Plaintiff claims that Bridgecrest violated the UTPCPL and the LIPL and was unjustly enriched by allegedly charging interest in excess of the interest rate caps imposed by the CCC and by charging allegedly impermissible "pay-to-pay" fees. *See* Compl. ¶¶ 46-59.

14. While Bridgecrest denies Plaintiff's allegations and reserves all rights to contest them, particularly because Bridgecrest Credit Company, LLC is only the servicer, and not the originator or holder of Plaintiff's RISC and class certification is otherwise inappropriate, based on Plaintiff's allegations and putative class definitions, *see* Compl. ¶ 37, Bridgecrest Credit Company, LLC has calculated that during the six-year period prior to the filing of the Complaint (the statute of limitations applicable to Plaintiff's UTPCPL claim—the longest statute of limitations of all of Plaintiff's three causes of action), Bridgecrest Credit Company, LLC charged more than 50,000 "money transfer fees" to customers with a Pennsylvania mailing address. *See* Beinlich Declaration ¶ 5.

15. Plaintiff claims a right to statutory damages under the UTPCPL of $100 for each "money transfer fee" charged. *See, e.g.*, Compl. ¶ 51 (citing 73 P.S. § 201-9.2(a)). Accordingly, with more than 50,000 "money transfer fees" charged, Plaintiff claims a right to over $5,000,000.00 in statutory damages under the UTPCPL. Plaintiff further seeks other damages based on allegedly excessive interest, in addition to attorneys' fees and costs.

16. Therefore, CAFA's "amount-in-controversy" requirement is satisfied. The relief Plaintiff seeks under the UTPCPL related to the "money transfer fees" challenged by Plaintiff in this case alone exceeds CAFA's $5,000,000 "amount-in-controversy" requirement.

***CAFA's Minimal Diversity Requirement***

17. **Second**, CAFA eliminates the "complete diversity" requirement in 28 U.S.C. § 1332(a) and instead imposes a "minimal diversity" requirement for class actions that is satisfied so long as "any member of a class of plaintiffs is a citizen of a State different from any defendant." *See Doyle v. Southwest Airlines, Inc.*, No. 17-11767 (JMV) (MF), 2018 WL 1128775, at *2 (D.N.J. Mar. 1, 2018) (quoting 28 U.S.C. § 1332(d)(2)(A)). CAFA's "minimal diversity" requirement therefore requires "only one member of the plaintiff class—named or unnamed—[to] be diverse from any one defendant" for diversity to be satisfied. *See Gallagher v. Johnson & Johnson Consumer Companies, Inc.*, 169 F. Supp. 358, 602 (D.N.J. 2016).

18. The citizenship of a natural person is determined by where he or she is domiciled. *See Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d Cir. 2008). In this case, Plaintiff alleges that he resides in Lawrence County, Pennsylvania. *See* Compl. ¶ 5. Accordingly, Plaintiff is a citizen of Pennsylvania.

19. Further, a corporation is a citizen of every state by which it has been incorporated and of the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1). Plaintiff alleges that Bridgecrest is an Arizona corporation headquartered in Arizona. *See* Compl. ¶ 6. Accordingly, Bridgecrest is a citizen of Arizona.[2]

---

[2] Additionally, the sole member of Bridgecrest Credit Company, LLC is SilverRock Group, Inc., which is a Delaware corporation with a principal place of business in Arizona. *See* Beinlich Declaration ¶ 4. Bridgecrest Credit Company, LLC is therefore a citizen of Delaware and Arizona. *See GBForefront, LP v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 41 (3d Cir. 2018) (noting that

20. Because Plaintiff is a citizen of Pennsylvania and Bridgecrest is a citizen of Arizona, CAFA's "minimal diversity" requirement is satisfied. *See* 28 U.S.C. § 1332(d)(2)(A).

***CAFA's 100-Member Requirement***

21. **Third**, courts within the Third Circuit hold that allegations that the putative class consists of "hundreds" of members reasonably satisfies CAFA's "100-member" requirement. *See Judon*, 773 F.3d at 505 ("Because [the plaintiff] explicitly asserted in her complaint that there are 'hundreds of members,' [the defendant] was entitled to rely on this fact as an admission in favor of jurisdiction."); *Ciccone v. Progressive Specialty Ins. Co.*, Civil Action No. 3:20-CV-981, 2020 WL 7319777, at *4 (M.D. Pa. Dec. 11, 2020) ("[Plaintiff] does not dispute that the proposed class contains at least 100 members; her complaint alleges 'hundreds of members in the proposed [c]lass.'").

22. In this case, Plaintiff alleges that "[t]here likely are hundreds of members of the class." *See* Compl. ¶ 39. Based on this allegation, CAFA's "100-member" requirement is satisfied. *See Judon*, 773 F.3d at 505; *Ciccone*, 2020 WL 7319777, at *4.[3]

23. Moreover, during the six years prior to the filing of the Complaint, more than one hundred customers with a Pennsylvania mailing address were charged "money transfer fees" by Bridgecrest Credit Company, LLC. *See* Beinlich Declaration ¶ 6.

---

citizenship of a limited liability company, whose sole member is a corporation, is determined by the state of incorporation and principal place of business of the corporation). Plaintiff and Bridgecrest Credit Company, LLC are therefore citizens of different states.

[3] Of course, "[h]owever, the CAFA numerosity holding is not dispositive of Rule 23 numerosity." *See Kotsur v. Goodman Global, Inc.*, Civil Action No. 14-1147, 2016 WL 4430609, at *3 (E.D. Pa. Aug. 22, 2016). CAFA's "100-member" requirement applies to the number of *proposed* class members, where Rule 23's numerosity requirement applies to the number of *actual* class members, which must be proven by a preponderance of the evidence. *Id.*

24.     This assertion also satisfies CAFA's "100-member" requirement. *See Papurello v. State Farm Fire & Cas. Co.*, 144 F. Supp. 3d 746, 756 (W.D. Pa. 2015) (finding that declaration submitted by defendant for removal purposes sufficiently established that plaintiff's putative class consisted of at least one hundred members).

## REMOVAL PROCEDURE

25.     Removal is timely under 28 U.S.C. § 1446(b) and Fed. R. Civ. P. 6(a) because this Notice of Removal is filed within thirty (30) days of Bridgecrest's receipt of the Complaint.

26.     Removal is properly made to the United States District Court for the Western District of Pennsylvania under 28 U.S.C. § 1441(a) because Allegheny County, Pennsylvania, where the State Court Action is pending, is within the Western District of Pennsylvania. *See* 28 U.S.C. § 118(c).

27.     Bridgecrest will file written notice of the filing of this Notice of Removal with the Court of Common Pleas of Allegheny County, Pennsylvania, concurrently with the filing of this Notice of Removal, and will serve the same on Plaintiff pursuant to 28 U.S.C. § 1446(d).

## CONCLUSION

WHEREFORE, pursuant to this Notice of Removal, Bridgecrest hereby removes this matter from the Court of Common Pleas of Allegheny County, Pennsylvania and respectfully requests that the matter captioned above proceed as properly removed to this Court.

- 9 -

Dated: February 17, 2023　　　　　　　　　　　**REED SMITH LLP**

　　　　　　　　　　　　　　　　　　　　　　*/s/ Justin J. Kontul*
　　　　　　　　　　　　　　　　　　　　　　Perry A. Napolitano
　　　　　　　　　　　　　　　　　　　　　　Pa. I.D. No. 56789
　　　　　　　　　　　　　　　　　　　　　　Justin J. Kontul
　　　　　　　　　　　　　　　　　　　　　　Pa. I.D. No. 206026
　　　　　　　　　　　　　　　　　　　　　　Alex G. Mahfood
　　　　　　　　　　　　　　　　　　　　　　Pa. I.D. No. 324047
　　　　　　　　　　　　　　　　　　　　　　225 Fifth Avenue, Suite 1200
　　　　　　　　　　　　　　　　　　　　　　Pittsburgh, PA 15222
　　　　　　　　　　　　　　　　　　　　　　T: (412) 288-3131
　　　　　　　　　　　　　　　　　　　　　　F: (412) 288-3063
　　　　　　　　　　　　　　　　　　　　　　pnapolitano@reedsmith.com
　　　　　　　　　　　　　　　　　　　　　　jkontul@reedsmith.com
　　　　　　　　　　　　　　　　　　　　　　amahfood@reedsmith.com

　　　　　　　　　　　　　　　　　　　　　　*Counsel for Defendant*
　　　　　　　　　　　　　　　　　　　　　　*Bridgecrest Acceptance Corporation*

## **CERTIFICATE OF SERVICE**

I certify that on February 17, 2023, a true and correct copy of the foregoing Defendant Bridgecrest Acceptance Corporation's Notice of Removal has been served via U.S. Mail, postage paid, and Electronic Mail upon the following individuals:

Kevin Abramowicz
Kevin Tucker
Chandler Steiger
Stephanie Moore
East End Trial Group LLC
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
kabramowicz@eastendtrialgroup.com
ktucker@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

*Counsel for Plaintiff
Mathew Caughey*

/s/ Justin J. Kontul